**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Christopher Cole

    v.                              Civil No. 13-cv-274-LM
                                    Opinion No. 2015 DNH 030
Corporal FNU Fluery and
Corporal FNU Dube[1]


**O R D E R**


    Christopher Cole, an inmate at the New Hampshire State
Prison ("NHSP") has sued in three counts.  Against Corporal
("Cpl.") Randy Fleury and Corrections Officer ("CO") Michael
Dube, he asserts: (1) a claim that those officers used excessive
force against him in violation of the Eighth and Fourteenth
Amendments to the United States Constitution (Count I); and (2)
a claim that those officers are liable to him for assault and
battery under state common law (Count II).  Cole also asserts a
claim against Cpl. Fleury for exposing him to inhumane prison
conditions that violated the Eighth and Fourteenth Amendments

---

[1] While this is the official caption of the case, "Corporal
FNU Fluery" is actually Cpl. Randy Fleury, and "Corporal FNU
Dube" is actually CO Michel Dube."  In this order, the court
refers to the defendants by their proper names and ranks.

(Count III).[2]  Before the court is a motion for summary judgment filed by Cpl. Fluery and CO Dube.  Cole has not objected.  For the reasons that follow, defendants' motion for summary judgment is granted.

## I. Summary Judgment Standard

"Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Ponte v. Steelcase Inc., 741 F.3d 310, 319 (1st Cir. 2014) (quoting Cortés–Rivera v. Dept. of Corr., 626 F.3d 21, 26 (1st Cir. 2010)); see also Fed. R. Civ. P. 56(a).  When ruling on a motion for summary judgment, the court must "view[] the entire record 'in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.'" Winslow v. Aroostook Cnty., 736 F.3d 23, 29 (1st Cir. 2013) (quoting Suarez v. Pueblo Int'l, Inc., 229 F.3d 49, 53 (1st Cir. 2000)).

"The object of summary judgment is to 'pierce the boilerplate of the pleadings and assay the parties' proof in

---

[2]  Counts I and III are brought through the vehicle of 42 U.S.C. § 1983, which provides, in pertinent part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law."

order to determine whether trial is actually required.'"
Dávila v. Corp. de P.R. para la Diffusión Púb., 498 F.3d 9, 12
(1st Cir. 2007) (quoting Acosta v. Ames Dep't Stores, Inc., 386
F.3d 5, 7 (1st Cir. 2004)).  "[T]he court's task is not to weigh
the evidence and determine the truth of the matter but to
determine whether there is a genuine issue for trial." Noonan
v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009) (citations and
internal quotation marks omitted).

     "The nonmovant may defeat a summary judgment motion by
demonstrating, through submissions of evidentiary quality, that
a trialworthy issue persists." Sánchez-Rodríguez v. AT&T
Mobility P.R., Inc., 673 F.3d 1, 9 (1st Cir. 2012) (quoting
Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006)).
That is, "the party seeking to avoid summary judgment must be
able to point to specific, competent evidence to support his
claim." Sánchez-Rodríguez, 673 F.3d at 9 (quoting Soto-Ocasio
v. Fed. Ex. Corp., 150 F.3d 14, 18 (1st Cir. 1998)) (internal
quotation marks omitted).

## II. Background

     The court begins by identifying the sources of the facts
recited in this section.  Defendants' summary-judgment motion
includes a statement of material facts, supported by record

citations, as required by Local Rule 56(1)(a).  Plaintiff has not objected to defendants' motion for summary judgment. Ordinarily under such circumstances, all properly supported facts set forth in defendants' statement of facts would be deemed admitted.  See LR 56(1)(b).  But, plaintiff has filed a verified complaint, and that complaint is properly "treated as the functional equivalent of an affidavit [for the purpose of opposing a summary-judgment motion] to the extent that it satisfies the standards explicated in Rule 56(e)."  Sheinkopf v. Stone, 927 F.2d 1259, 1262 (1st Cir. 1991).  That said, except as otherwise indicated, the following facts are undisputed.

At all times relevant to his claims, Cole was incarcerated in a section of the NHSP's Secure Psychiatric Unit called Echo Ward.  On the evening of May 18, 2013, inmates on Echo Ward flooded the tier on which Echo Ward is located by plugging their toilets and then flushing them.  In response, Cpl. Fleury cut off the water to the tier and began removing the water that had flooded it.  Plaintiff does not allege in his amended complaint, nor may it be reasonably inferred from his allegations, that the flooding involved anything but water.  That is, Cole does not allege, or even hint, that the water that flooded his cell contained human waste.

Cpl. Fleury shut off water to the tier shortly before midnight, and turned it back on at about 2:30 p.m. the next day. That forced Cole to spend 15 hours in a cell with a toilet he could not flush.  He cleaned up the water on the floor of his cell without gloves or disinfectant, did so barefooted, and was denied the opportunity to take a shower immediately thereafter. During the clean-up process, inmates on Echo Ward were yelling and banging on their doors.

The day after the flooding on Echo Ward, the inmates housed there were still acting disruptively, and were served bag lunches, rather than lunches on trays, in an effort to minimize contact between inmates and correctional officers.  Inmates housed on Echo Ward received all their meals in their cells. Their food was delivered by sliding it through a "tray slot," which is an opening in a cell door that consists of a smaller door that may be opened, closed, and locked.

When Cpl. Fleury and CO Dube attempted to push Cole's bag lunch through his tray slot, Cole responded by declining his lunch and then attempting to push a wet trash bag back through the slot.  Neither Cpl. Fleury nor CO Dube knew what was in the bag, but feared that it might contain a urine-soaked blanket and/or feces.  Presumably because Cole was attempting to dispose of trash outside the designated time for doing so, Cpl. Fleury

5

ordered Cole to stop pushing the bag through the slot.  It is undisputed that Cole failed to comply; he has testified to that effect.  Cpl. Fleury then ordered Cole to pull his arms and the bag back into his cell.  Cole again failed to comply, and actually succeeded in pushing the trash bag all the way out of his cell.  Then, when Cole continued to hold onto the edge of the tray slot, Cpl. Fleury and CO Dube pushed Cole's hands and arms back through and locked the door of the tray slot.

In his verified complaint, Cole alleges that Cpl. Fleury and CO Dube: (1) slammed the tray-slot door on his hands; (2) held, twisted, and pulled his fingers while applying pressure to them with the tray-slot door; and (3) stomped on his fingers. However, defendants have produced deposition testimony, elicited from Cole while viewing a videotape of the incident, in which he admitted that the tape showed no pulling or stomping by Cpl. Fleury or CO Dube.  It is undisputed that the entire incident took about a minute and was captured in its entirety on the videotape.

This action followed.  In Count I, Cole asserts that Cpl. Fleury and CO Dube pulled, twisted, and stomped on his fingers, hands, and arms, in violation of his Eighth-Amendment right to be free from cruel and unusual punishment in the form of excessive force.  In Count II, he asserts that Cpl. Fleury and

6

CO Dube are liable to him for committing assault and battery, under the common law of New Hampshire.  In Count III, he asserts that Cpl. Fleury violated his Eighth-Amendment rights by acting with deliberate indifference to his medical needs by subjecting him to an unsanitary and unhygienic cell.

**III. Discussion**

Defendants move for summary judgment of each of Cole's claims, under a variety of legal theories.  In the section that follows, the court considers each claim in turn, beginning with the two federal claims and concluding with Cole's claim under the common law of New Hampshire.

A. Count I

Count I is Cole's excessive-force claim against Cpl. Fleury and CO Dube.  Defendants argue that they are entitled to judgment as a matter of law on Count I because: (1) they are entitled to qualified immunity ; (2) Cole has failed to state an excessive-force claim; (3) Cole has failed to exhaust the administrative remedies available to him, which bars his claim under the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a); and (4) Cole has failed to disclose an expert witness within the timeframe established in the court's discovery order.

Defendants are entitled to qualified immunity from Cole's excessive-force claim.

"Generally speaking, '[a]fter incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" Skinner v. Cunningham, 430 F.3d 483, 488 (1st Cir. 2005) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). Thus, "[t]he critical question in such a case is whether the force was applied 'maliciously and sadistically for the very purpose of causing harm,' rather than 'in a good-faith effort to maintain or restore discipline.'" Skinner, 430 F.3d at 488 (quoting Whitley, 475 U.S. at 320-21; Hudson v. McMillian, 503 U.S. 1, 7 (1992)). In other words, "not 'every push or shove' will reach the level required for an actionable excessive force claim." Mlodzinski v. Lewis, 648 F.3d 24, 38 (1st Cir. 2011) (quoting Alexis v. McDonald's Rests. of Mass., Inc., 67 F.3d 341, 352 (1st Cir. 1995)).

Turning to qualified immunity, the court of appeals for this circuit has described the purpose of that doctrine and the framework for applying it:

> Qualified immunity is a judge-made doctrine designed to curtail the legal liability of public officials.  See Pagán v. Calderón, 448 F.3d 16, 31 (1st Cir. 2006).  All state actors except "the plainly incompetent [and] those who knowingly violate the

8

law," are shielded from individual liability for damages under this doctrine. Malley v. Briggs, 475 U.S. 335, 341 (1986).

A two-part framework governs whether a defendant is entitled to qualified immunity. See Haley v. City of Boston, 657 F.3d 39, 47 (1st Cir. 2011). First, we inquire whether the facts, taken most favorably to the party opposing summary judgment, make out a constitutional violation. See Pearson v. Callahan, 555 U.S. 223, 232 (2009). Second, we inquire whether the violated right was clearly established at the time that the offending conduct occurred. See id. The second, "clearly established," step itself encompasses two questions: whether the contours of the right, in general, were sufficiently clear, and whether, under the specific facts of the case, a reasonable defendant would have understood that he was violating the right. Maldonado v. Fontanes, 568 F.3d 263, 269 (1st Cir. 2009).

Ford v. Bender, 768 F.3d 15, 23 (1st Cir. 2014) (parallel citations omitted).

Courts often "bypass the first step of the qualified immunity framework and . . . focus instead on the second step." Ford, 768 F.3d at 23 (citing Maldonado, 568 F.3d at 269-70); see also Hunt v. Massi, 773 F.3d 361, 367 (1st Cir. 2014). Based upon the undisputed facts of this case, however, the court can rule on qualified immunity at the first step.

It is undisputed that: (1) Cole repeatedly disobeyed orders from Cpl. Fleury and CO Dube to stop pushing trash through his tray slot and to pull his hands and arms back into his cell; and (2) the officers used their hands and arms (but not their feet)

to push Cole's hands and arms back into his cell, which Cole resisted by holding onto the edge of the slot.  It is also undisputed that the videotape of the incident did not show either of the officers: (1) trying to pull Cole's hands and arms out through the slot; or (2) stomping on Cole's hands or arms. If presented with the undisputed facts in this case, no reasonable jury could conclude that those facts make out a violation of Cole's right to be free from the application of excessive force.  That is, even when viewed most favorably to Cole, the facts would not allow a reasonable jury to find that Cpl. Fleury or CO Dube applied force against Cole in anything other than a properly calibrated good-faith attempt to maintain order on E-ward.  Thus, as a matter of law, no excessive force was used against Cole by either defendant.  That entitles Cpl. Fleury and CO Dube to qualified immunity from Count I.

B. Count III

Count III is Cole's deliberate-indifference claim against Cpl. Fleury.  He frames that claim this way:

> The failure of defendant [Fleury] to provide adequate sanitation and the basic elements of hygiene constitutes deliberate indifference to the plaintiff[']s physical and mental health needs in violation of the Eighth Amendment of the United States Constitution.

Am. Compl. (doc. no 29) 6.  More specifically, Cole claims that
Cpl. Fleury violated his Eighth-Amendment rights by: (1) denying
him cleaning supplies such as disinfectant; (2) not allowing him
to take a shower immediately after pushing water from
overflowing toilets (but not human waste) out of his cell while
barefoot and without gloves; (3) tossing a food bag on the wet
floor of his cell the day after the flood; and (4) subjecting
him to 15 hours in his cell with no running water, which exposed
him to odors emanating from his unflushed toilet.

While Count III is framed as a claim for deliberate
indifference to a serious medical need, see Kosilek v. Spencer,
774 F.3d 63, 82 (1st Cir. 2014) (describing the elements of such
a claim), that count is best construed as an "inhumane-
conditions-of-confinement" claim, i.e., a claim that Cpl.
Fleury's actions denied Cole "the minimal civilized measure of
life's necessities," Feijoo v. Mass. Dep't of Pub. Safety, ---
F. Supp. 3d ---, ---, 2014 WL 6769972, at *2 (D. Mass. Dec. 2,
2014) (quoting Hudson, 503 U.S. at 8-9)).  Pro se complaints are
to be construed liberally.  See Foley v. Wells Fargo Bank, N.A.,
772 F.3d 63, 75 (1st Cir. 2014) (citing Erickson v. Pardus, 551
U.S. 89, 94 (2007) (per curiam)).  And the court's construction
of Count III is more favorable to Cole than his own framing of
that claim, owing to the difficulties he would face in

11

establishing a serious medical need, see Kosilek, 774 F.3d at
82.  Accordingly, the court construes Count II as an inhumane-
conditions claim rather than a claim that Cpl. Fleury was
deliberately indifferent to a serious medical need.

Cpl. Fleury argues that he is entitled to judgment as a
matter of law on Count III because, in the first instance, Cole
has failed to state a claim on which relief can be granted,
under the standard applicable to Rule 12(b)(6) of the Federal
Rules of Civil Procedure.  Determining whether a claim meets
that standard requires the court to conduct a limited inquiry,
focusing not on "whether a plaintiff will ultimately prevail but
whether the claimant is entitled to offer evidence to support
the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  To
survive a Rule 12(b)(6) motion, a complaint "must contain
sufficient factual matter, accepted as true, to 'state a claim
to relief that is plausible on its face.'" González-Maldonado
v. MMM Healthcare, Inc., 693 F.3d 244, 247 (1st Cir. 2012)
(quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); citing
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

Turning to the relevant substantive law, an Eighth-
Amendment inhumane-conditions claim "must meet both objective
and subjective criteria." Surprenant v. Rivas, 424 F.3d 5, 18

(1st Cir. 2005) (citing Farmer v. Brennan, 511 U.S. 825, 834

(1994)).  Specifically:

> [T]he plaintiff must [first] establish that, from an
> objective standpoint, the conditions of his
> confinement deny him the minimal measure of
> necessities required for civilized living.  [Farmer,
> 511 U.S. at 834.]  Second, the plaintiff must show
> that, from a subjective standpoint, the defendant was
> deliberately indifferent to inmate health or safety.
> Id.  Deliberate indifference, in this sense, is a
> mental state akin to criminal recklessness.  Id. at
> 836–37.

Surprenant, 424 F.3d at 18-19 (footnote and parallel citation

omitted).  It is well established in the prison context that the

necessities required for civilized living include sanitation.

See Rhodes v. Chapman, 452 U.S. 337, 348 (1981); see also

Masonoff v. DuBois, 899 F. Supp. 782, 788 (D. Mass. 1995)

(describing the constitutional standard for sanitation as

"reasonably adequate sanitation and the ability to eliminate and

dispose of one's bodily wastes without unreasonably risking

contamination") (quoting Whitnack v. Douglas Cty., 16 F.3d 954,

958 (8th Cir. 1994)).

Cole's inhumane-conditions claim is that he was denied

constitutionally sufficient sanitation in the immediate

aftermath of the flooding on Echo Ward.  As the court

understands Cole's complaint, it is based upon two conditions:

13

(1) his exposure to water from overflowing toilets; and (2) his deprivation of a flushable toilet for about 15 hours.

Before moving to those specific issues, the court notes that "[i]n determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the objective component of an Eighth Amendment claim, [it should] consider the circumstances, nature, and duration of the deprivation." Bender v. Sullivan, No. 1:09-cv-00575-LJO-GBC (PC), 2012 WL 273487, at *2 (E.D. Cal. Jan. 30, 2012) (citing Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000)); see also Masanoff, 899 F. Supp. at 788 (explaining that the "length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards [and that a] filthy, overcrowded cell and a diet of 'grue' [sic] might be tolerable for a few days and intolerably cruel for weeks or months") (quoting Hutto v. Finney, 437 U.S. 678, 686-87 (1978)).

With regard to the allegedly inhumane conditions in this case, one court has explained that "[t]he Eighth Amendment is generally not violated . . . where unsanitary conditions are temporary." Ortiz v. Dep't of Corr., No. 08 Civ. 2195(RJS)(HBP), 2011 WL 2638137, at *7 (S.D.N.Y. Apr. 29, 2011) (quoting Kee v. Hasty, No. 01 Civ.2123(KMW)(DF), 2004 WL 807071, at 26 n.24 (S.D.N.Y. Apr. 14, 2004)).  To the contrary, only a

"[s]ubstantial deprivation[] of . . . sanitation over an extended time [is] sufficiently serious to satisfy the objective component of an Eighth Amendment claim." Bender, 2012 WL 273487, at *2.  The durational requirement is particularly relevant in this case, given that Cole does not allege that he was unable to flush his toilet for any more than one day.  That said, the court turns to the factual bases for Cole's claim, exposure to toilet water, and his brief lack of a flushable toilet.

### A. Exposure to Toilet Water

With regard to Cole's exposure to toilet water, "[a] housing area flooded with water, urine, and feces may amount to a serious deprivation," for the purpose establishing the objective component of an inhumane-conditions claim. Alvarez v. Yates, No. 1:09-cv-02148-MJS (PC), 2012 WL 1424297, at *3 (E.D. Cal. Apr. 24, 2012) (citing Anderson v. Cty. of Kern, 45 F.3d 1310, 1314 (9th Cir. 1995)) (emphasis added).  Here, however, Cole's complaint does not allege that his cell was flooded with anything but water.  That is, the complaint does not allege the presence of human waste in the water that came into Cole's cell.  That seriously undermines a claim based upon Cole's exposure to the flood water in his cell.

15

In Green v. French, the court granted summary judgment to a defendant correctional officer where the plaintiff prisoner alleged that his cell was flooded with water contaminated with urine and feces but, at summary judgment, "presented no evidence to support [his] claim other than his own guess as to the contents of the water," No. 05-4075, 2007 WL 1832034, at *3 (C.D. Ill. June 25, 2007). That is, without any evidence of contamination in the water that flooded the plaintiff's cell, the court granted summary judgment to the defendant.

Here, Cole alleges that his cell was flooded with water that came out of toilets, but does not allege that the flood water contained any human waste. And as regards a cell flooded by water, "it is clear that confining a prisoner to a flooded cell for a brief period of time does not violate the Eighth Amendment." Bagwell v. Brewington-Carr, No. CIV.A. 97-321-GMS, 2000 WL 1728148, at *19 (D. Del. Apr. 27, 2000) (ruling that corrections officer did not violate Eighth Amendment by confining prisoner for "at most, a few days in a cell where water coated the floor") (citing Evans v. Fogg, 466 F. Supp. 949, 950-51 (S.D.N.Y. 1979)).

Moreover, assuming that Cole had alleged that his cell was flooded with water containing human waste, that alone would be insufficient to state a plausible claim for relief. It is, of

course, beyond reasonable dispute that exposure to human waste is both offensive and unhealthy.  See DeSpain v. Uphoff, 264 F.3d 965, 974-75 (10th Cir. 2001) (collecting cases).  Even so, mere exposure to human waste is not enough to establish the objective component of an inhumane-conditions claim; the court must still examine the duration and intensity of the exposure. See McBride v. Deer, 240 F.3d 1287, 1291-92 (10th Cir. 2001).

In Alvarez, the plaintiff alleged that the floor of his housing unit was flooded with water, urine, and feces, and that he slipped and fell into the flood while complying with a correctional officer's instruction to cross the flooded floor by stepping on mattresses laid across it, see 2012 WL 1424297, at *1.  But, absent further allegations concerning the circumstances and duration of the flooded conditions, the court was unable to determine whether the plaintiff suffered a sufficiently serious deprivation of his right to sanitation. See id.  Alvarez is not the only case in which mere exposure to human waste was insufficient to establish the objective component of an inhumane-conditions claim.  See, e.g., Spears v. Ferguson, Civil No. 08-5203, 2010 WL 909202, at *6 (W.D. Ark. Mar. 11, 2010) (objective component not satisfied when inmate spent 19 hours in cell with residue from flooding, including excrement); Davis v. Scott, 157 F.3d 1003, 1006 (5th Cir. 1998)

17

(objective component not established when plaintiff was placed
in a cell with blood on the walls and excrement on the floor);
Herring v. Tabor, No. 9:12-cv-1739 (GLS/DEP), 2014 WL 2946545,
at *6 (N.D.N.Y. June 30, 2014) (adopting report and
recommendation in which magistrate judge acknowledged that "[a]n
inmate's exposure to human waste may, in extreme situations,
satisfy the objective element of an Eighth Amendment analysis,"
but recommended dismissal of inmate's inhumane-conditions claim
where inmate was obligated to clean up human feces in recreation
yard, but was exposed only briefly and was issued gloves)
(emphasis added).

In short, to the extent that Count III is based upon
exposure to the water that flooded into his, Cole has failed to
state a claim because he has not alleged, in the first instance,
that the flood water contained any human waste.  But, even if he
had so alleged, he has not made allegations concerning the
conditions and duration of the resulting contamination
sufficient to allege a deprivation that satisfies the objective
component of an inhumane-conditions claim.  Accordingly, the
court turns to the second aspect of Count III, Cole's claim that
Cpl. Fleury violated his Eighth-Amendment rights by depriving
him of of a working toilet for approximately 15 hours.

B. Lack of a Flushable Toilet

As the court has already noted, constitutionally adequate prison sanitation includes an inmate's "ability to eliminate and dispose of [his or her] bodily wastes without unreasonably risking contamination." Masonoff, 899 F. Supp. 2d at 788 (citation omitted). Here, however, Cole has fallen short of stating an actionable claim based upon his lack of a working toilet.

In Smith v. United States, the court adopted a report and recommendation in which the magistrate judge determined that the objective component of an inhumane-conditions claim was satisfied by allegations that: (1) for two weeks, correctional officers refused to flush the toilet in the plaintiff's cell; (2) the toilet overflowed, allowing feces and urine to flow onto the floor; (3) the plaintiff was required to sleep on the floor, near the raw sewage; and (4) he became ill from the odor of the sewage, see No. 9:09-CV-729 (TJM/DRH), 2011 WL 777969, at *10 (N.D.N.Y. Feb. 3, 2011). Here, by contrast, Cole alleges only a 15-hour interruption of his ability to flush his toilet, does not allege any overflow, and alleges no injury other than the unpleasantness of having to smell his own waste.

Cole's allegations place the conditions of his confinement on the mild end of the spectrum of cases involving prison

19

toilets in which courts have found that plaintiffs have not
established the objective component of an inhumane-conditions
claim.  See, e.g., Smith v. Copeland, 87 F.3d 265, 268 (8th Cir.
1996) (inmate was exposed to raw sewage from toilet overflow for
about four days, but alleged no adverse consequences from
exposure); Ortiz, 2011 WL 2638137, at *8 (inmate was exposed to
waste from overflowing cell toilet on three occasions for no
more than 24 hours in total); Dennis v. Therman, 959 F. Supp.
1253, 1261-63 (C.D. Cal. 1997) (water to cell toilets was shut
off for 36 hours following prison disturbance); Burgos v.
Canino, 358 F. App'x 302, 308 (3d Cir. 2009) (inmate was
deprived of water and sanitary conditions for two days after
flood at prison) (citing Bell v. Wolfish, 441 U.S. 520, 547
(1979)); Willey v. Kirkpatrick, No. 07-CV-6484 (MAT), 2013 WL
434188, at *9 (W.D.N.Y. Feb. 4, 2013 (inmate's toilet was shut
off for several days but inmate claimed neither overflow nor
illness resulting from smelling his own waste); Kidwell v.
Buchanan, 996 F.2d 1225, 1993 WL 230224, at *1 (9th Cir. 1993)
(unpublished table decision) (inmate's toilet was disabled from
flushing for approximately 12 hours).

     The court concludes by quoting from Odom v. Keane, in which
Judge Sotomayer addressed a prisoner's claim that his jailors
violated his Eighth-Amendment rights by incarcerating him in a

20

cell in which the toilet was inoperable for ten hours per day

for several months:

> Plaintiff's claim that his toilet did not flush
> between the hours of 9:00 p.m. and 7:00 a.m. for a
> period of several months also fails to state a
> constitutional violation.  "[R]easonably adequate
> sanitation and the ability to eliminate and dispose of
> one's bodily wastes without unreasonably risking
> contamination are basic identifiable human needs of a
> prisoner protected by the Eighth Amendment. . . ."
> Whitnack v. Douglas County, 16 F.3d 954, 958 ([8th]
> Cir. 1994).  Although it is difficult to fathom how
> one toilet flushing mechanism, and not all of the
> flushing mechanisms on one water line, could
> malfunction on a regular basis only between the hours
> of 9:00 p.m. and 7:00 a.m., this condition does not
> amount to cruel and unusual punishment.  While I have
> no doubt that such a situation would be patently
> offensive to plaintiff, the fact that plaintiff was
> made uncomfortable by the stench, these conditions in
> and of themselves do not sustain a constitutional
> claim.  See Rhodes, 452 U.S. at 347 (inconvenience is
> considered a part of the penalty criminal offenders
> pay for their offenses against society).  Plaintiff's
> toilet functioned approximately twelve hours every
> day, time enough to dispose of plaintiff's bodily
> wastes.  Plaintiff makes no assertion that he risked
> contamination by contact with human waste.

> Plaintiff has failed to prove the objective
> component of his claim, as required by Wilson[, 501
> U.S. at 298].

No. 95 Civ. 9941(SS), 1997 WL 576088, at *5 (S.D.N.Y. Sept. 17,

1997).  If the conditions in Odom did not satisfy the objective

component of an inhumane-conditions claim, the conditions

alleged in this case surely do not.

Based upon the foregoing, the court concludes that Cole has not established the objective component of an Eighth-Amendment inhumane-conditions claim based upon his 15-hour lack of access to a flushable toilet.  Accordingly, Cpl. Fleury is entitled to judgment as a matter of law on Count III.

C. Count II

Count II is Cole's state-law claim for assault and battery against Cpl. Fleury and CO Dube.  Defendants argue that they are entitled to judgment as a matter of law on Count II because they enjoy sovereign immunity from that claim.  Rather than wade into the merits of defendants' sovereign-immunity argument, which is rooted in state law, the court dismisses Count II on a different ground.  "Courts generally decline to exercise supplemental jurisdiction over state claims if the federal predicate is dismissed early in the litigation." O'Connor v. Commonwealth Gas Co., 251 F.3d 262, 272 (1st Cir. 2001) (citing Camelio v. Am' Fed'n, 137 F.3d 666, 672 (1st Cir. 1998)).  This case is in its early stages.  Cole's federal claims are gone.  The court declines to exercise supplemental jurisdiction over Cole's state claim, which is, therefore, dismissed.

## IV. Conclusion

For the reasons detailed above, defendants' motion for summary judgment, document no. 34, is granted.  The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge


February 20, 2015

cc:   Christopher Cole, pro se
      Lynmarie C. Cusack, Esq.
      Nancy J. Smith, Esq.